ERIE LACKAWANNA RY. CO., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(No. 70-708—Decided July 14, 1971.)

228

230

*Mr. Wallace R. Steffen,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mrs. Sally W. Bloomfield,* for appellee.

DUNCAN, J. The two cars in question in this case are not cabooses in that they do not conform to the specifications of R. C. 4963.21  Furthermore, since they are not cabooses, it is equally clear that they cannot be used for a "like purpose," *i.e.,* used for the purpose that cabooses are used.

It is apparent that the General Assembly, in enacting R. C. 4963.21, was concerned with the safety and health of railroad employees, and the safe operation of trains. T-cabooses obviously do not have the physical attributes that are required for cabooses, and, obviously, could not be used for over-the-road general railroad operations.

Our question herein narrows to whether it is manda-

tory for the safety and comfort of railroad employees and for the safe operation of trains in *yard operations,* that a caboose, or a car used for a like purpose, meeting the specifications of R. C. 4963.21, be used.

In its order, the commission's third conclusion of law reads:

"The operation by respondent of transfer cars which do not meet the statutory requirements of Section 4963.21 of the Revised Code presents an unsafe and hazardous working condition for respondent's employees."

The commission's conclusion, to be reasonable and lawful, must be supported by evidence. We find no such evidence that *any railroad cars* used for the purpose of transporting railroad train crews on short hauls not to exceed five miles in yard operations must have all the features required by R. C. 4963.21, or that they are unsafe and hazardous. On the other hand, there is evidence that there are no laws, rules, regulations, orders or labor agreements which require that a "caboose car or other car used for like purposes" be furnished for yard and transfer service in trains operating less than five miles in any direction. *

---

3 "Q. Aside from the fact they are a statutory requirement, why does the caboose in road service have a cupola where a rider car or transfer car does not have a cupola or bay window? A. For the distance in which the train crew operates between terminals and for the crew members to have a better opportunity to look their train over.

"Q. The train or road service travels greater distances at faster speeds? A. That is correct.

"Q. You consider under those circumstances it is more likely something can happen to a train, which requires inspection? A. Yes, sir.

"Q. Conversely, if a train travels a shorter distance at a slower speed, is it more likely or less likely for the train to have difficulties? A. There is less likelihood of a train having difficulties while traveling at a slow rate of speed.

"Q. Is this a reason for not having a bay window or cupola on a transfer car that travels for short distances at a slow speed in yard service? A. That would be one of the reasons.

"Q. Do you know of any state law or regulation or railroad rule or labor agreement which requires or provides that Erie Lackawanna

Appellee, in its brief, argues that *"transfer service does not require the use of a caboose,"* but that "where a railroad elects to supply a car for the convenience of the railroad employees it must conform to R. C. 4963.21."

The commission also argues: "The commission properly made no findings as to the safety of T-cabooses. Appellee emphasizes that this argument is immaterial because the Legislature has made a decision as to what the minimum requirements for safety are."

If the commission admits that no special cars for the transportation of train crews in yard operations are necessary at all, we are unable to comprehend how yard operations are somehow made unsafe and hazardous by the use of T-cabooses. There is no evidence that train crew members in yard operations who can be transported in a locomotive or other railroad car are subjected to a greater hazard when riding in a T-caboose.

Although it is clear that Railway Company employees ride short distances in T-cabooses in the course of their

---

must furnish a caboose on a rider car such as cars T-18 and T-19 for yard service and transfer service? A. No, sir, I do not.

"Q. In other words, a railroad can make a movement in transfer service or yard service without a rider car? A. Yes, sir, they can and they do do it.

"Q. Why is a rider car furnished when there is no law, regulation, rule or labor agreement which requires that a rider or transfer car be furnished? A. For the convenience of the yard men.

"Q. Is there any operating efficiency obtained by having the rider car on the train for the trainmen to expedite switching? A. No, sir.

"Q. Would it be possible for all the trainmen to ride in the cab of the locomotive? A. Yes, sir, it is, and they have ridden in the cab of the locomotive.

"Q. Without the rider car being on the train, is that correct? A. That is correct.

"Q. To make this point clear, let me ask you this—would it be possible for Erie Lackawanna to just remove the rider cars T-18 and T-19 and let their train crews ride in the cab of the locomotive with respect to yard movements and transfer movements? A. Yes, sir, it would be. It was more or less the request of the Brotherhoods that a car of this type was built by the railroad."

work, and that regular cabooses at one time had been used for that purpose, we find no evidence of probative value that this transportation must be in a caboose or a car used for a "like purpose." If train crews working in yard operations can be transported in a locomotive, adherence to the theory appellee's brief appears to advocate would require such locomotive to have all the features of a caboose required by R. C. 4963.21.

In the absence of evidence that, in a railway company's yard operation where travel does not exceed five miles in any direction, the safety and comfort of train crew personnel and the safety of the operation of a train require a caboose or a car used for a like purpose as defined in R. C. 4963.21, an order of the Public Utilities Commission that a railway company in such operation cease and desist from using T-cabooses or transfer cars not having the features required by R. C. 4963.21 is unreasonable and unlawful.

As a result of our decision, we do not confront the question whether or not the commission can enforce compliance with R. C. 4963.21.

*Order reversed.*

SCHNEIDER, HERBERT, CORRIGAN, STERN and LEACH, JJ., concur.

O'NEILL, C. J., dissents.